CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

APR 0 9 2009

JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| DEBORAH MERRITT, <br><br> *Plaintiff,* <br><br> v. <br><br> OLD DOMINION FREIGHT LINE, INC., <br><br> *Defendant.* | CIVIL NO. 6:07-CV-00027 <br><br><br> MEMORANDUM OPINION <br><br><br> JUDGE NORMAN K. MOON |

This matter is before the Court on the parties' cross-motions for summary judgment. The motions have been fully briefed and were argued before this Court on March 27, 2009. For the following reasons, the Plaintiff's motion will be denied, and the Defendant's motion will be granted.

## I. BACKGROUND

Deborah Merritt, the plaintiff in this case, claims that she was discharged from her job as a truck driver as a result of gender discrimination, and brings a claim for employment discrimination under Title VII of the Civil Rights Act of 1964, § 701 *et seq.*, 42 U.S.C.A. § 2000e *et seq.*

Old Dominion Freight Line, Inc. ("Defendant" or "Old Dominion") is a trucking company providing nation-wide and international services. Old Dominion hired Merritt in January 1996 as an over-the-road Line-Haul driver at the Greensboro, North Carolina terminal. In 1997 and again in 2001, Merritt suffered on-the-job ankle injuries. As a result of the 1997 injury, Merritt was restricted to seated work for one month, after which she was released to her

normal duties without restriction. As a result of the 2001 injury, Merritt missed work for a few days, and was then released to her normal duties.

In about 2002, Merritt began to express interest in obtaining a position with Old Dominion as a local pickup and delivery ("P&D") driver. She wanted the position so that she could have a more regular schedule and more regular hours. She also wanted to transfer to Old Dominion's Lynchburg terminal, which was closer to her home. In May 2002, she filled in as a P&D driver at the Lynchburg terminal for about 24 days. When a permanent position became available shortly thereafter, Merritt expressed interest in it to Bobby Howard, the Lynchburg terminal manager. However, Howard told Merritt that he did not have permission to fill the position. Later, Howard hired a male for the position who had less truck driving experience than Merritt and had never worked for the Defendant before. In fact, Merritt was required to instruct the new hire on certain tasks so that he was prepared to take a licensing test. According to Merritt, when she asked Howard why he had told her that he did not have permission to fill the position, he responded that "it had been discussed and it was decided that they could not let a woman have that position."

Merritt continued to fill in as a P&D driver in Lynchburg several times during the rest of 2002. In May 2003, another permanent position became available, and Merritt again expressed her interest to Howard. However, the Old Dominion again hired a male for the position, who had less overall truck driving experience than Merritt. Merritt alleged that she was told by Howard that L.B. Clayton, Old Dominion's Regional Vice President, had concerns about having a woman in the P&D driver position, and therefore Plaintiff's request for a transfer was denied.[1]

---

[1] Old Dominion challenges the admissibility of the statements made by Howard concerning his discussions with Clayton as irrelevant to the adverse employment action at issue in this case. Old Dominion also challenges the admissibility of an expert witness report prepared for the Plaintiff by Michael Napier. However, because I find that

-2-
Case 6:07-cv-00027-NKM    Document 45    Filed 04/09/09    Page 2 of 16    Pageid#: 1624

Clayton denied making any such statements to Howard or anyone else. Clayton further stated that his first discussion with Howard about Merritt's interest in a P&D position in Lynchburg was in March 2004.

In 2004, another P&D driver position became available in Lynchburg, and Merritt again contacted Bobby Howard to request a transfer. Howard conferred with Clayton about Merritt's request, and they agreed to transfer Merritt to Lynchburg as a P&D driver. Upon her transfer, Merritt claimed that she was placed on a "probationary period" of 90 days, after which, if she performed her job without any problems, she would be able to keep the position permanently. She said that Howard told her that the probationary period was Clayton's condition for giving her the position. Merritt also alleged that none of the male drivers who transferred from Line Haul to P&D positions were placed on any kind of probation. Clayton disputed this account, and instead explained that Merritt was not placed on probation at all, but was given the same opportunity offered to all transferring employees to change their mind about the transfer within 90 days and return to their former position without penalty or loss of seniority.

Earl Brown, the P&D driver hired in Lynchburg in 2003 instead of Merritt stated in an affidavit that when Merritt was again applying for P&D driver position in 2004, Howard approached him and asked him if he would have a problem with Merritt working there. Brown replied that he would not. He further stated that shortly after Merritt began working in Lynchburg as a P&D driver, Steve Godsey, the Operations Manager in the Lynchburg terminal, said to him, "I don't see why they brought her here in the first place. This is not a woman's place." Marvin Davis, another P&D driver in Lynchburg, stated in an affidavit that before Merritt was transferred in 2004, Howard approached him and asked him how he would feel

---

the Plaintiff has not met her burden of proof at this stage, even when taking the challenged evidence into consideration, it is unnecessary to resolve the question of admissibility.

about working with a woman. Davis stated that he would not have a problem with it. Michael Pike, a Line Haul driver in the Lynchburg terminal, testified in a deposition that Howard once told him that he had concerns about having a female in a P&D driver position.

On March 29, 2004, Merritt officially began her new position as a P&D Driver out of the Lynchburg terminal. However, her job classification was never officially changed from Line Haul driver to P&D driver. From the date of her transfer until September 29, 2004, Merritt performed her job duties as a P&D driver satisfactorily and without incident or complaint. During this time, she was the only female P&D driver in Old Dominion's Lynchburg, Greensboro and Waynesboro terminals.[2]

On September 29, 2004, Plaintiff suffered an injury while moving boxes on the loading floor during a delivery. She was diagnosed with a sprain/strain of her foot, a bone spur in her heel, and a pre-existing condition of plantar fasciitis, which was exacerbated by the sprain. Merritt was forced to miss work because of the injury. Several days after the injury, Merritt contacted Brian Stoddard, Defendant's Vice President of Safety and Personnel, to discuss what would happen as a result of her absence from work. Stoddard discovered that Howard had failed to properly report Plaintiff's injury, and Howard was subsequently discharged. Stoddard then properly reported Plaintiff's injury so that she could receive appropriate medical attention.

Merritt's doctor initially ordered that she perform only light-duty, non-driving work. In anticipation of a scheduled appointment with her doctor on December 27, 2004, Stoddard instructed Kristine Maynard, in Old Dominion's personnel department, to schedule a physical ability test ("PAT")[3] for Merritt as soon as possible after the doctor's appointment. There is some confusion in the evidence as to the circumstances under which Plaintiff would be required

---

[2] As of 2007, Old Dominion employed 3,105 P&D drivers nationwide.
[3] This test is referred to in the record as a physical ability test, PAT, or an "ISO" test. For the sake of consistency, I will use "PAT" throughout this opinion.

to take the PAT. Stoddard testified that he was aware of the possibility that Merritt would be released to work on a trial basis, and had told the personnel department that Merritt should have the test if that turned out to be the case. However, Katrena Parker, Defendant's workers' compensation claim representative, sent an email to Stoddard and others stating that if Merritt was not given a full release, she would cancel the PAT. After examining her on December 27, 2004, Merritt's doctor released her to her full duties on "a trial basis." Stoddard therefore determined that Merritt should take the PAT.

The PAT that Merritt took was designed for Old Dominion by Advanced Ergonomics, Inc. ("AEI"), an independent contractor. In developing the test, AEI considered the general requirements for employees in the trucking industry and the actual job requirements of Old Dominion drivers to determine the components of test and appropriate minimum passing scores for each activity tested. The test is the same for both Line Haul and P&D drivers. The test is administered by an independent company that records the results of the test, but does not know whether those results indicate that the employee passed or failed the test. Instead, the company sends the results to AEI, which determines passage or failure and informs Old Dominion of the results. The test is graded on an overall pass/fail basis. AEI has conducted validation studies to demonstrate that the PAT was job-appropriate.

Merritt took the PAT on December 28, 2004. Merritt testified that during the test, she was required to stand and had no problems with the ankle she had injured. She did have difficulty with one component of the test, in which she was required to lift a weighted box onto a shelf above her head. According to Merritt, she was unable to reach the shelf because of her height, even when standing on a stool. Merritt failed that portion of the test, as well as four out of five other components, and failed the test overall. AEI reported these results to Old

Dominion. Stoddard then decided that Merritt had inadequate upper body strength to physically perform her job, and notified Merritt that she would not be allowed to return to work. Stoddard indicated that Merritt might be allowed to do some strength conditioning and take the PAT again, but could not guarantee that opportunity. Merritt did not attempt to re-take the PAT at any point. She was officially terminated on February 1, 2005. The reason for her termination was noted as "unable to perform job" on her paperwork. Plaintiff had not resumed her duties as a P&D Driver up to that point.

After Merritt's employment was terminated, Old Dominion hired three males – two full-time and one part-time – as local P&D drivers in the Lynchburg terminal. Merritt filed a charge of gender discrimination with the EEOC, which issued a Right to Sue notice on May 14, 2007.[4] Merritt now seeks injunctive relief, back pay, front pay, compensatory damages, punitive damages, costs and interest, and reasonable attorney's fees.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides that a court should grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In order to preclude summary judgment, the dispute about a material fact must be "'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* However, if the evidence of a genuine issue of material fact "is merely colorable or is not

---

[4] Plaintiff filed her Complaint on August 7, 2007, within the 90 limit of receipt of the Right to Sue notice, and it is therefore timely filed.

significantly probative, summary judgment may be granted." *Id.* at 250.

In considering a motion for summary judgment under Rule 56, the court must view the record as a whole and draw reasonable inferences in the light most favorable to the nonmoving party. *See, e.g., id.* at 248–50 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986); *In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir.1999).

If the nonmoving party bears the burden of proof, "the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. If the moving party shows such an absence of evidence, the burden shifts to the nonmoving party to set forth specific facts illustrating genuine issues for trial. *See* Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324.

A court should grant a motion for summary judgment if, after adequate time for discovery, the nonmoving party fails to make a showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. The nonmoving party "may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in [Rule 56]—set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). Indeed, the nonmoving party cannot defeat a properly supported motion for summary judgment with mere conjecture and speculation. *Glover v. Oppleman*, 178 F. Supp. 2d 622, 631 (W.D. Va. 2001) ("Mere speculation by the non-movant cannot create a genuine issue of material fact."). The trial judge has an "affirmative obligation" to "prevent 'factually unsupported claims and defenses' from proceeding to trial." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting *Celotex*, 477 U.S. at 317).

"When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law," and in considering each motion "the court must take care to resolve all factual disputes and any competing, rational inferences in the light most favorable to the party opposing that motion." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (citations and quotation marks omitted). The fact that both sides moved for summary judgment "neither establish[es] the propriety of deciding a case on summary judgment, nor establish[es] that there is no issue of fact requiring that summary judgment be granted to one side or another." *Continental Air., Inc. v. United Air., Inc.*, 277 F.3d 499, 511 n.7 (4th Cir. 2002) (citations and quotation marks omitted).

### III. Discussion

Title VII makes it "an unlawful employment practice for an employer ... to discharge ... or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, *because of* such individual's ... sex." 42 U.S.C.A. § 2000e-2(a)(1) (emphasis added). Merritt argues that Old Dominion discriminated against her by requiring her to take the PAT before returning to work and by discharging her when she failed the PAT. She also argues that the PAT that Old Dominion uses has a disparate impact on women.

#### A. Disparate Treatment Claim

Merritt may prove her disparate treatment claim, or defeat the Defendant's summary judgment motion, by either of two avenues of proof: (a) through direct or circumstantial evidence that gender discrimination motivated the decision to discharge her or (b) by proving that the employer's stated reasons for the decision were a pretext for discrimination through the

burden shifting scheme established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284-85 (4th Cir. 2004)(en banc), *cert. dismissed*, 543 U.S. 1132 (2005). Merritt does not argue that gender discrimination was one of multiple motivating factors for her discharge (a so-called "mixed motives" case); rather, she argues that Old Dominion's use of the PAT was simply a pretext for illegal discrimination.

Merritt has thus chosen to proceed under the *McDonnell Douglas* framework, which requires Merritt to make a prima facie showing that: (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) she was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class. *Hill*, 354 F.2d at 285. If Merritt makes such a showing, the Defendant has a burden of production to articulate a legitimate, non-discriminatory reason for Merritt's discharge. *Id.* Merritt must then prove by a preponderance of the evidence that the Defendant's stated reasons for the discharge were a pretext for discrimination. *Id.* In other words, Merritt's ultimate burden of proof of discrimination merges with the burden to demonstrate pretext. *Id.* (citing *Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)).

Merritt has clearly demonstrated the first, second and fourth elements of the prima facie case: she is a woman, she was discharged from her employment, and her position was filled by a male. However, the parties dispute whether Merritt has proven the third element of the prima facie case: that she was performing her job duties at a level that met her employer's legitimate expectations at the time she was discharged. This element of the prima facie case "comports with the purpose of requiring the establishment of a prima facie case-to screen out those cases whose facts give rise to an inference of nondiscrimination, in other words, to eliminate the most

common, nondiscriminatory reasons for the employer's conduct." *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 514 (4th Cir. 2006) (citing *Miles v. Dell*, 429 F.3d 480, 488 n.5 (4th Cir. 2005)). The employee is therefore required to show that "he was doing his job well enough to rule out the possibility that he was fired for inadequate job performance, absolute or relative." *Id.* (quoting *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1013 (1st Cir. 1979)). Courts should not interpret this element too strictly, in order to avoid premature dismissal of potentially meritorious claims. *Id.* at 516.

In order to prove this element, Merritt may offer qualified expert testimony on the employer's expectations and whether Merritt was meeting those expectations. *King v. Rumsfeld*, 328 F.3d 145, 150 (4th Cir. 2003). The Plaintiff's co-workers may qualify as such experts, if Merritt proffers them as such. *Id.* The Plaintiff's own perception of her job performance cannot create an issue of fact on this element; only the employer's perceptions are relevant. *Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 960-961 (4th Cir. 1996). The employer may counter Merritt's evidence with evidence defining its expectations as well as evidence that the employee was not meeting those expectations. *Warch*, 435 F.3d at 515.

In this case, neither party has explicitly set out what Old Dominion's legitimate expectations were. It is therefore difficult to determine whether or not Merritt was meeting those expectations at the time she was discharged. Old Dominion argues that because Merritt was injured and out of work at the time she was discharged, she could not possibly have been meeting Old Dominion's legitimate expectations. Old Dominion relies on *Stafford v. The Radford Community Hospital, Inc.*, 1997 WL 428342 (4th Cir. 1997) (unpublished opinion, per curiam), in which the Fourth Circuit affirmed the district court's holding that the plaintiff was not meeting her employer's legitimate expectations because she had been out of work with a

back injury for three months prior to her discharge. However, *Stafford* is factually distinguishable from this case because in *Stafford*, the plaintiff's injury was permanent and kept her from performing any of her job duties. *Id.* at *3. In contrast, Merritt's injury was temporary, and there was no indication that the injury would prevent her from resuming her full duties once it healed. At the time she was discharged, Merritt's doctor had released her to return to work on a trial basis, but without any physical restrictions.

Further, as Old Dominion concedes, the undisputed evidence shows that while Merritt was driving a truck, both as a Line Haul and a P&D driver, she was able to do her job without assistance and in a satisfactory manner. There is no evidence of any complaint against Merritt for poor performance or any negative performance review. Merritt also produced evidence that many of her co-workers suffered on-the-job injuries much more serious than hers, were out of work for longer periods of time, and were allowed to return to work once they recovered. This suggests that Old Dominion did not view missing work because of an on-the-job injury as a reason to discharge an employee or an indication that an employee is not performing her job duties to the company's satisfaction. Therefore, it remains possible that Merritt was performing her job duties at a level that met her employer's legitimate expectations at the time of her discharge.

However, even if Merritt has proven a prima facie case of discrimination, Old Dominion has articulated a legitimate, non-discriminatory reason for the discharge, and Merritt has not adduced sufficient proof of pretext to either prevail on her own summary judgment motion or to withstand Old Dominion's motion. Old Dominion's non-discriminatory reason for discharging Merritt is that she failed the PAT, which indicated that she did not have the requisite physical strength to safely perform her job duties. Old Dominion explained that it required Merritt to take

-11-
Case 6:07-cv-00027-NKM   Document 45   Filed 04/09/09   Page 11 of 16   Pageid#: 1633

the PAT because the "trial basis" release made Old Dominion concerned about its own potential liability for any accident or incident involving Merritt during the trial period. Therefore, Stoddard required Merritt to take the PAT to resolve any ambiguity about Merritt's physical fitness to go back to work. This explanation satisfies Old Dominion's burden to articulate a legitimate, non-discriminatory reason for Merritt's discharge.

Merritt has failed to prove that this reason was a pretext for discrimination, because she has not produced any evidence that Brian Stoddard, the Old Dominion employee responsible for Merritt's discharge, harbored any discriminatory animus. Employer liability under Title VII is evaluated according to agency principles. *Hill*, 354 F.3d at 287 (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 754 (1998)). Agency principles limit employer liability to liability for the acts of employees holding supervisory or other actual power to make tangible employment decisions. *Ellerth*, 524 U.S. at 762. However, "the person allegedly acting pursuant to a discriminatory animus need not be the 'formal decisionmaker' to impose liability upon an employer for an adverse employment action, so long as the Plaintiff presents sufficient evidence to establish that the subordinate was the one 'principally responsible' for, or the 'actual decisionmaker' behind, the action." *Hill*, 354 F.3d at 288 -289 (discussing *Reeves, supra*).

In this case, the undisputed evidence shows that Stoddard was the sole decisionmaker for Old Dominion. Stoddard testified that he alone decided to require Merritt to take the PAT when she was released on a trial basis. He also testified that he alone decided to discharge Merritt after she failed the PAT. Merritt offers no evidence to contradict Stoddard's testimony. While Merritt has shown that L.B. Clayton, Old Dominion's Regional Vice President, harbored some discriminatory animus towards women, she has not shown that Stoddard shared those sentiments or that there was any link between Clayton's sentiments and Stoddard's decisions to require her

to take the PAT and then to discharge her after she failed it.

Merritt argues that there is some circumstantial evidence that shows Stoddard intended to discriminate against her because she is a woman. First, the three P&D drivers hired in the Lynchburg terminal after Merritt was discharged were all male. Second, Old Dominion administers the PAT in varying circumstances, and without a clear policy on when it is to be used. Stoddard testified that he alone decides when an employee must take the PAT. Old Dominion admitted that the PAT is given in "varying circumstances" on a case-by-case basis. Third, Merritt argues that Stoddard contracted with AEI to design the PAT even though he knew that the *anticipated* pass rate among women on the PAT was only 77%, whereas it was 99% for males. This, Merritt argues, suggests that Stoddard intentionally instituted a test that discriminates against women, and then required Merritt to take the test because he knew there was a good possibility that she would fail it.

Finally, Merritt argues that she was treated differently than similarly situated male employees or female Line Haul drivers in being required to take the PAT. For example, Gerald Dalton was a P&D driver who was out of work for 6 months after a hernia operation. He was not required to take the PAT upon his return to work. Charles Blalock, a Line Haul driver, was not required to take a PAT after 3 months out of work for a broken leg that resulted in a 10% disability rating. Donald Smith, a Line Haul driver, took a "functional capacity evaluation" after a shoulder injury, because his release from his doctor was not definitive enough. Merritt argued that a functional capacity evaluation is a more limited test designed to evaluate the injured body part, rather than the employee's general physical ability. Smith passed the functional capacity evaluation and returned to work. Delores Taton was a female Line Haul driver in the Charlotte, North Carolina terminal. She was out of work for four years after she was hit by a car and

-13-
Case 6:07-cv-00027-NKM   Document 45   Filed 04/09/09   Page 13 of 16   Pageid#: 1635

suffered serious and extensive injuries. When she returned to work, her doctor released her for one 2-day trip, on which she had to go with another person, to "see if she could handle it." After she completed that trip, she received a full release from her doctor. She was also required to take a functional capacity evaluation, which she passed.

However, this limited circumstantial evidence is not sufficient to create a genuine issue of material fact on whether Merritt's failure of the PAT was a pretext for discrimination. Before Merritt took the PAT, nine other women had taken it, and all of them had passed. This undermines Merritt's suggestion that Stoddard required her to take the PAT because he knew she would fail it. Further, the evidence that Merritt was treated differently than her co-workers is of limited probative value, because Merritt did not produce sufficient details about the nature of her co-workers' releases from their doctors, or about the physical tests they were required to take. Therefore, it is difficult to tell whether Merritt's co-workers were similarly situated to her, or whether slight differences in the circumstances resulted in the different treatment. Even if Merritt was treated slightly differently than a few co-workers, she has not produced any evidence to show that it was because she is a woman. The other employees that Merritt offers for comparison, both men and women, were required to take some sort of physical test before returning to work when they received conditional releases from their doctors. Merritt presents no evidence that she would have been able to pass the tests that her co-workers took or a similar test designed to evaluate her ankle. Given that she failed five out of the six components of the PAT, it appears that Merritt actually was lacking the overall physical strength generally required for her position.

Thus, Merritt has offered no real evidence to lead to the conclusions that Stoddard decided to give Merritt the PAT because he knew she would fail, that he desired her to fail

-14-
Case 6:07-cv-00027-NKM   Document 45   Filed 04/09/09   Page 14 of 16   Pageid#: 1636

because she was a woman, or that he discharged her because she was a woman rather than because she failed the PAT. Because Merritt has not shown that Stoddard discharged her because she was a woman, or created a genuine issue of material fact on that fundamental requirement of a Title VII claim, summary judgment will be granted for Old Dominion.

## B. DISPARATE IMPACT CLAIM

Merritt also argues that the PAT used by Old Dominion has a disparate impact on women. In order to make a prima facie case of disparate impact, Merritt must show that a "facially neutral employment practice had a significantly discriminatory impact." *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 265 (4th Cir. 2005). If Merritt makes a prima facie case of disparate impact, the employer may defend by showing that the employment practice has a manifest relationship to the employment in question. *Connecticut v. Teal*, 457 U.S. 440, 446-47 (1982). Even then, Merritt may ultimately prove discrimination by showing that the challenged practice was used as a pretext for discrimination. *Teal*, 457 U.S. at 447.

In order to show that the challenged employment practice had a discriminatory impact, Merritt may rely on "statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group." *Watson v. Fort Worth Bank and Trust*, 487 U.S. 977, 994-95 (1988). Merritt does not produce any statistical evidence that might reliably show that Old Dominion's PAT had a disparate impact on women. A summary table compiled by Old Dominion shows that between May 2001 and February 2005, 106 male and 4 female (including Merritt) P&D drivers were given the PAT.[5] The pass rate for men was 87.74%. The pass rate for women was 75%, with Merritt being the only woman to fail the test. Among Line Haul

---

[5] Merritt did not offer any evidence to show what percentage of Old Dominion's drivers are female, or what percentage of female drivers were required to take a PAT.

drivers, 65 men and 6 women took the PAT. The pass rate among both groups was 100%. Therefore, the overall pass rate for women was 90% and the overall pass rate for men was 92.39%. While a sample size of 10 women is too small to be statistically significant, these numbers do not indicate that the PAT actually had a disparate impact on the employment of women at Old Dominion. Merritt offers no evidence that the PAT resulted in having fewer women employees, or resulted in more women losing their employment. The only adverse impact that Merritt can point to as a result of the PAT is her own discharge. This is insufficient to make a prima facie showing of disparate impact. *See, e.g.*, *Walls v. City of Petersburg*, 895 F.2d 188, 191 (4th Cir. 1990) (holding that the plaintiff failed to prove a prima facie case of disparate impact because she "offers no evidence that anyone . . . has ever been terminated or otherwise adversely affected" by the challenged employment practice).

## IV. Conclusion

For the foregoing reasons, Plaintiff's Motion for Summary Judgment will be denied, and Defendant's Motion for Summary Judgment will be granted.

The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion to all counsel of record. An appropriate Order will follow.

ENTERED: This 9th Day of April, 2009.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE